## CAPE GIRARDEAU COUNTY COURT & Others v. HILL.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE EASTERN DISTRICT OF MISSOURI.

Argued April 7, 1886.—Decided April 19, 1886.

A statute authorizing a municipal corporation to create a debt, required a tax to be levied on real estate to pay it. After the debt was contracted, an amendment to the act authorized the levy for that purpose to be made on personal property also. The debt not being paid, and both acts being in force, the creditor acquired by due proceedings the right to a writ of mandamus, directing the levy of a tax in order to pay his debt : *Held,* that he was entitled to a writ commanding the levy on both species of property.

The act of the Legislature of Missouri of May 10, 1871, amending the act of March 23, 1868, entitled "An Act to facilitate the construction of railroads in the State of Missouri " was not repealed by the failure of the legislature to incorporate it into the Revision of 1879.

This was a proceeding by mandamus commenced in the Circuit Court of the United States for the Eastern District of Missouri. The information was based upon a judgment obtained by the relator in that court April 7, 1881, for the sum of $6659.80, the amount of certain past due coupons of bonds issued by the county of Cape Girardeau, in that State, for the payment of a subscription made by the township of the same name to the capital stock of the Cape Girardeau and State Line Railroad Company. The authority for making the subscription and issuing the bonds was a popular vote at a township election held on the 13th of April, 1869, under a statute of March 23, 1868, entitled "An Act to facilitate the construction of railroads in the State of Missouri." Laws Missouri, 1868, p. 92. The first section of that act prescribed the condition upon which such elections could be ordered by the county court, and required coupon bonds to be issued, in payment of any subscription voted, "if it shall appear, from the returns of such election, that not less than two-thirds of the qualified voters of such township voting at such election are in favor of such subscription." By the second section it was made the duty of the county

court, from time to time, in order to pay any subscription so voted, or the interest and principal of any bond issued on account of such subscription, to " levy and cause to be collected, in the same manner as county taxes, a special tax, which shall be levied on all the *real estate* lying within the township making the subscription, in accordance with the valuation then last made by the county assessor for county purposes."

By an act passed March 10, 1871, the second section of the last-mentioned statute was so amended as to require this special tax to be "levied on all the real estate *and personal property, including all statements of merchants doing business* within the said city, town, township or county, lying and being within the township making the subscription, in accordance with the valuation then last made by the county assessor for county purposes : *Provided, however,* that no county, city, town or township shall ever in the aggregate subscribe a sum exceeding ten per cent. of the last annual assessment within said county, city or township."    Laws Missouri, 1871, p. 55.

It was averred in the information that a demand was made upon the county court and the judges thereof to pay the said judgment, interest and costs, or that they levy and cause to be collected upon the real estate and personal property in the township subject to taxation, including merchants' licenses, a tax according to law for the purpose of paying the said judgment, interest and costs ; that such demand was refused ; and that the county had no property out of which the judgment, interest and costs could be made.

The return to the alternative writ of mandamus admitted the right of the relator to a levy of a tax upon the real estate in the township, but to so much of the information as sought to compel a levy upon personal property and merchants' licenses the county made the following defence : That the act of March 10, 1871, was repealed by the General Assembly of Missouri in 1879, before the relator obtained his judgment ; and that the county court had not had since such repeal, and had not then, any authority to levy taxes upon personal property or merchants' licenses in the township of Cape Girardeau for the purpose of paying relator's judgment.

Upon the final hearing of the cause, it was ordered that the county court, within thirty days after being served with a copy of the order, should cause to be paid whatever amount of money may be in the treasury of the county to the credit of the township, applicable to the payment of the judgment herein; " said amount being whatever sum has not been heretofore paid on judgments and writs thereunder, *pro rata*, rendered upon coupons for which taxes have been collected for the coupons due of the same year, from which said judgments and writs, if any other than the relators in this case, unless of equal date therewith, are to be excluded in said *pro rata* computation."

It was further ordered and adjudged that, in default of the payment of the full amount of the principal, interest, and costs, the county court " cause to be levied and collected, in the same manner as county taxes are levied and collected, a special tax to be assessed and levied on all the real estate and personal property lying and being within the township of Cape Girardeau, in the said county of Cape Girardeau, and including all statements of merchants doing business within said township, for the purpose of paying the judgment of relator, or so much thereof as may remain unpaid at the time of making said levy, together with interest and costs; " that the levy so ordered and directed be made at the time of making the annual levy of taxes for State and county purposes in the year 1883; that the said special tax be extended on the regular tax-book for said year, in a separate column on said book; and that it " cause the collection of said tax by suit, distraint, or otherwise, as by law required, and when collected to pay the same to the relator or his attorney of record."

From that judgment the present writ of error was prosecuted.

*Mr. R. B. Oliver* for plaintiffs in error.

*Mr. J. B. Henderson* for defendant in error.

MR. JUSTICE HARLAN, after stating the case, as above reported delivered the opinion of the court.

The plaintiffs in error concede, as they must have done, that the coupons upon which the relator obtained judgment are, in view of the decisions of this court, obligations which may be enforced by suit against the county. If any question could have been made as to their validity, it is concluded by the judgment which is the foundation of the present proceeding. The only question now before us is, whether the relator is entitled to have a tax levied upon any property other than real estate lying within the township. In behalf of the plaintiffs in error it is contended that, as the act of 1868 only required a tax to be levied on real estate, it was beyond the power of the legislature by subsequent enactment, after the bonds were issued, to subject any property other than real estate to taxation for the purpose of meeting this liability of the township. Such legislation, it is claimed, is in violation of the prohibition, found in both the National and State Constitutions, of laws impairing the obligations of contracts. This position cannot be maintained. There was not, within the meaning of such prohibition, any contract between the State and the township in respect either of the subscription which the latter voted, or of the bonds issued in its behalf. The township being a part of the civil government of the State established for public purposes, the powers conferred upon it were at all times subject to legislative control or modification—at least to such as was not inconsistent with the contract rights of third parties. But for the provision in the State Constitution making the assent of the voters of the township, given at an election held for that purpose, a condition precedent to the right of making a subscription, in its behalf, in aid of the construction of railroads, the legislature could have imposed the tax without submitting the question to popular vote. The provision in the act of 1868 subjecting real estate to the tax therein authorized, was nothing more than an expression of the legislative will, and did not prevent the enlargement, in the discretion of the legislature, of the subjects of taxation. The township having legally incurred an obligation to pay the bonds in question, it was competent for the legislature, at any time, to make provision for its being met by taxation upon any kind of property within

the township that was subject to taxation for public purposes.

The only remaining point to be considered is whether the act of 1871 was in force when this proceeding was commenced. We are of opinion that it was. It certainly had not then been expressly repealed. But it is argued that the legislature refused to incorporate it in the revision of 1879, and by such refusal indicated a purpose to repeal it. One answer to this argument is that it does not appear that the legislature so refused. Its express direction, at the regular session of 1879, was that the Revised Statutes, which it then ordered to be prepared, should contain all laws of a general nature in force at the commencement of that session and "not expressly repealed, nor repugnant to the provisions" of any act passed at that session, "and continued in force by their own provisions." Rev. Stat. Missouri 1879, § 3154. It was further declared that "all acts or parts of acts of a general nature, in force at the commencement of the present session of the general assembly, and not repealed, shall be, and the same are hereby, continued in full force and effect, unless the same be repugnant to the acts passed or revised at the present session." § 3161. It is not claimed that the act of 1871 was repugnant to any act passed at the session of 1879, when the revision was set on foot; and as it had not then been "expressly repealed," it results that it was continued in full force. And this seems to have been the view of the legislature at a subsequent session; for by an act passed March 24, 1885, after the judgment below, the act of March 10, 1871, was expressly repealed. We perceive no ground for holding that the act of 1871 was repealed prior to the passage of the act of 1885.

The judgment is *Affirmed.*