HURST, PURNELL & CO. v. SAMUELS.

WEILLER & SON v. SAME.

1. On appeal from a decree refusing to admit a prisoner in arrest under final process to the benefit of the Insolvent Debtor's Act, a previous order refusing to vacate the order of arrest cannot be reviewed, as it was not an intermediate order under subd. 1 of section 11 of the Code, but a final order under subd. 3.

2. A provision in the General Statutes of 1882 authorizing the discharge

of an insolvent debtor under arrest under mesne process is not incon-
sistent with or repugnant to a provision in the General Statutes of
1872, authorizing the discharge of a prisoner under mesne or final
process, and therefore does not on these grounds repeal the provision
as to final process in the older law.   But as the same provision is re-
enacted in the later act, such a repeal is thereby effected.

3.  Repeals of statutes by implication are not favored.   Such a repeal is
    not effected unless the implication is a necessary one.   This is espe-
    cially so where such a repeal would injuriously affect personal liberty.

4.  Chapter CXVI.—§§ 2405–2423—of the General Statutes extends the
    benefits of the Insolvent Debtor's Act to persons in arrest under
    final process, as well as to those in arrest under mesne process ; and this
    is not affected by section 207 of the Code as amended in the revision
    of 1882.


Before NORTON, J., Fairfield, June, 1887.

These were two actions against Louis Samuels—one by Hurst,
Purnell & Co., and the other by Chas. Weiller & Son.  The only
decree considered on appeal was that of Judge Norton, which was
as follows, omitting its statement :

The principal issue arising upon the exceptions to the order of
the clerk is as to petitioner's right to the benefits of the insolvent
debtor's act.   Petitioner alleges that he is entitled to its benefits :
1st.  That the reference to the code to ascertain who may be dis-
charged under the act does not apply to the *kind* of process—
mesne or final—under which the arrest was made, but to the
causes of arrest, and that he can only be deprived of his liberty
upon the ground of fraud, which Judge Pressley's order indicates
should be tried by a jury.   2nd.  That if not guilty of any of the
things which under the act deprives him of its benefits, he is
entitled to his discharge as a necessary sequence to Judge With-
erspoon's order, adjudging the prison bound act to be of force.
3rd.  That under his petition he should be allowed the benefits of
chapter 123 of General Statutes of 1872, in its present form,
or by the allowance of an amendment.

To consider the petitioner's last defence first, I find that the
application is explicitly for the "benefits of the insolvent debtor's
act."   In favor of liberty, I proceed to inquire whether that was
a clerical error.   Judge Witherspoon's orders are the law of this

case, so far as applicable. I understand them to adjudge that the General Statutes of 1872 contain the law as it now stands as to the prison bounds and the discharge of poor prisoners, and the General Statutes of 1882 the law as to the discharge of insolvent debtors. Under the law as it stood prior to 1868, as well as now, a discharge, if under the poor prisoner's act, merely discharged the prisoner from imprisonment; but if under the insolvent debtor's act, it was from the debts of the plaintiffs in the suits and of all creditors who shared in the assigned property. The prison bounds was common to both, but when in prison bounds the prisoner had within forty (40) days after his release on bond to file his schedule, &c., and elect of which of these acts—the insolvent debtor's or poor prisoner's—he would take the benefits.

There were certain prerequisites to his obtaining either, the prerequisites before 1882 being the same for each. Whether they continue the same since 1882 is one of the questions in this case, and cannot affect the election, though it should be found that petitioner elected to take the benefit of an act which conferred no benefit upon him. Such an unreasonable election, however, would be more easily shown not to have been in reality made. Its unreasonableness alone would not show that it had not been made, and nothing else appears here. On the contrary, the words of the petitioner, the advertisement of the meetting, &c., all show that the application was made for the benefit of the insolvent debtor's act. And on inquiry I found no oath on file, but was informed by the clerk that the oath administered was the one prescribed by section 2407 of the General Statutes of 1882, which differs somewhat from the oath common to both acts. General Statutes of 1872, p. 691. I conclude, therefore, that there is no mistake in the petition, and that petitioner did elect to ask for the benefit of the insolvent debtor's act.

May he now amend if not entitled to a discharge under that act and petition for the benefit of the poor prisoner's act? I have just recited the substantial difference between the benefit of the two acts, and in my opinion it is not one of the amendments which can be made at this stage under section 194 of the Code. Petitioner cannot be allowed the benefits of the poor prisoner's

act under a petition for the benefits of the insolvent debtor's act. If he had thought proper within the forty days from giving his bond, he might have abandoned the present petition and filed one for the benefit of the poor prisoner's act; but he can no more change now than if he had frittered away his forty days of grace in applications for *habeas corpus*.

Petitioner argues that so much of the General Statutes of 1872 as relates to discharge of prisoners in execution on final process is of force, because no subsequent statute, particularly sections 2405 to 2423 of General Statutes of 1882, is repugnant to or inconsistent therewith, and that Judge Witherspoon's order included that when he decided that petitioner was entitled to the prisoner's bounds; that he could not have intended that the prisoner should be released on bond. and forever so held, and not permitted to take the next step, viz., procure his discharge if guilty of no fraud; that such intention would be a farce.   Judge Witherspoon only meant to declare the law of the question before him.   But he might well have intended to give the petitioner the right to apply for the benefit of the poor prisoner's act which would discharge him from imprisonment, even if he had conceived, as he seems to have done, that the General Statutes of 1882 superseded that part of General Statutes of 1872, which applied to insolvent debtors.

Was that part of the General Statutes of 1872, relating to insolvent debtors, repealed by chapter 96 of General Statutes of 1882?   One reading the two acts could arrive at no other conclusion than that one was intended to be a substitute for the other.   The matter is so nearly identical, yet there are certainly a few important verbal variations which I shall notice in the investigation of the next point.   Petitioner alleges that he is entitled to the benefits of the insolvent debtor's act of 1882; that it refers to sections 199 and 226 of the Code—not to point out at what stage of an action the arrest has been made, on mesne or final process, but the causes upon which the arrest was made.   The plaintiffs in execution contend that the petitioner having been arrested on final process, is not of the class of persons who may apply for the benefits of the insolvent debtor's act.

The verbal variations between the acts of 1872 and 1882 are

480  HURST, PURNELL & CO. *v.* SAMUELS.

Circuit Decree.        [29 S. C.

in relation to this question principally as follows, viz., section 2405 of 1882 begins: "Any person arrested in any civil action, as provided by chapter 1, title 7, of the Code of Procedure, being unwilling or unable to give the bail therein provided," &c. The corresponding section of 1872 begins, "That any prisoner on mesne or final process in any civil action," &c. Chapter 1, title 7, of the Code of Procedure refers to arrest and bail in civil actions before judgment. Section 2406 of 1882 substitutes three weeks' publications of notice to creditors for three months under the other act. Section 2407 of 1882 prescribes a similar but not the same oath as that prescribed in the other statute. In section 2408 of 1882 "clerk" is substituted for "court" twice. Under the substitute, "general provisions," section 2411 of 1882, it is provided as one of the penalties for a false schedule that the petitioner "shall be liable to be arrested again for the *action* on which he was discharged;" the other act that he "shall be liable to be arrested again for the action or execution on which he was discharged."

Section 2412 of 1882 begins, "Whenever a debtor in custody under the provisions of this chapter," &c.; and the corresponding section of 1872, "Whenever a prisoner, confined on mesne or final process," &c. Chapter 1, title 7, of the Code, to which chapter 96 of the General Statutes of 1882 refers, provides in section 204: "The order may be made to accompany the summons or at any time afterwards before judgment * * *. But said order of arrest shall be of no avail, and shall be vacated or set aside on motion, unless the same is served upon the defendant, as provided by law, before the docketing of any judgment in the action;" and in section 207, "The defendant at any time before execution shall be discharged from the arrest, either upon giving bail or upon depositing the amount mentioned in the order of arrest as provided in this chapter, or he may be discharged under the provisions of sections 2405 to 2423 inclusive of the General Statutes." Sections 209, 210, and 212 of the Code provided for the surrender of the defendant in an action in exoneration of his bail, and this until twenty days after action against them on the bail bond or longer, by order of the court, which is the only case, I suppose, where the insolvent debtor's act would apply

after judgment. Here the arrest is under execution and not in exoneration of bail.

I therefore conclude that the petitioner, Louis Samuels, is not entitled to his discharge from custody under his petition herein for the benefits of the insolvent debtor's act, whether or not he be guilty of any offence against the said act. If I thought it within my discretion, I should allow the amendment asked for by defendant, and adjudge him entitled to his trial by jury.

It is therefore ordered and adjudged, that the order of W. H. Kerr, clerk of this court, refusing to dismiss the petition herein, be vacated and set aside, and that the said petition be dismissed.

*Messrs. O. W. Buchanan, H. A. Gaillard,* and *Ragsdale & Ragsdale,* for appellant.

*Messrs. Obear & Rion* and *McDonald & Douglass,* contra.

October 29, 1888. The opinion of the court was delivered by

Mr. Justice McIver. The plaintiffs in the above stated cases brought their actions against the defendant, and under affidavits charging fraud, they each obtained orders for his arrest. Under these orders defendant was arrested on the 29th of January, 1887, and gave bail, and soon thereafter moved before the clerk for orders vacating the orders of arrest, which motions were refused by the clerk, and defendant appealed to the Court of Common Pleas. From this time forward the two cases seem to have been treated as one and will be so treated in this opinion. At the ensuing term of the court judgment was obtained against the defendant, and before any execution was issued, Judge Pressley heard the appeal from the clerk and dismissed the same, but granted an order staying the issue of execution until the hearing of a motion to be made before him, in the exercise of his original jurisdiction, to vacate the order of arrest. This motion was subsequently heard by the judge at chambers, and on the 11th of April, 1887, he filed his decision and order refusing to vacate the order of arrest, and on the same day plaintiffs issued their execution, which being returned *nulla bona*, they immediately issued execution against the person of defendant and he was arrested and lodged in jail.

On the next day—12th April, 1887—defendant gave notice of appeal from the order of Judge Pressley refusing to vacate the order of arrest, and served his exceptions thereto, which are set out in the record, and demanded his release from custody pending the appeal, with which demand the sheriff refused to comply. The defendant then filed his petition for the privilege of the prison bounds, "with the view of taking the benefit of the insolvent debtor's act," and this petition being refused by the clerk, on the ground that the prison bounds act had been repealed, the defendant appealed, and gave notice of a motion to be heard by Judge Witherspoon, to reverse the clerk's decision. This motion was granted by Judge Witherspoon, and the application was remanded to the clerk to hear and determine the same according to law. From this order the plaintiffs gave notice of appeal to the Supreme Court, upon the several grounds set out in the record. The clerk then proceeded to hear the defendant's application, to which the plaintiffs objected, insisting that the appeal from Judge Witherspoon's order remanding the application to the clerk to be heard by him, stayed all further proceedings pending the appeal. The objection was overruled by the clerk, who proceeded with the hearing of defendant's application, and thereupon the plaintiffs gave notice of a motion before Judge Witherspoon for an order reversing the ruling of the clerk. Upon the hearing of this motion Judge Witherspoon sustained the ruling of the clerk, and refused plaintiffs' motion. From this plaintiffs gave notice of appeal to the Supreme Court upon the grounds set out in the record.

The defendant, upon giving the bond required, was admitted to the privilege of the jail bounds, and in due time thereafter filed his petition and schedule praying the benefit of the insolvent debtor's act. On reading and filing this petition, the clerk granted an order citing the creditors to appear before him on a day specified. On the day appointed, counsel for plaintiffs appeared and moved to dismiss the petition upon the several grounds stated in the notice of the motion, all of which is set out in the record. The clerk refused the motion of plaintiffs to dismiss the petition, whereupon plaintiffs gave notice of appeal upon the same grounds as those stated in their notice of motion. It

is stated in the "Case," as prepared for argument here, that, "at
the time of serving the said notice of appeal and exceptions, the
order of the clerk overruling their motion to dismiss had not been
made and entered in writing, but, by agreement of counsel, it
was considered as if so made and entered in writing and was
immediately heard.    It was, however, during the hearing of the
appeal so made and entered."    This appeal was heard by Judge
Norton, who rendered judgment reversing the ruling of the clerk
and dismissing the petition.    From this judgment defendant ap-
peals to this court upon the several grounds set out in the record.

It seems to us that the real questions which we are called upon
to decide in this somewhat complicated case arise only out of the
decision of Judge Norton.    The appeal from Judge Pressley's
order refusing to vacate the order of arrest is not properly before
us.    That was a separate and independent matter, and should
have been the subject of a separate appeal.    It was not such an
intermediate order as was susceptible of review under an appeal
from the final judgment, under subdivision 1 of section 11 of the
Code, because it did not involve the merits.    The only question
before Judge Pressley was, not as to the merits of the action, nor
as to the merits of the question involved in the final appeal, but
simply whether such a showing had been made as justified the
clerk in granting the order of arrest.    He had no power to adju-
dicate finally the question of fraud, as that was a matter for
a jury, and it is very manifest from the language of his order that
he did not undertake to exercise any such power; but, on the
contrary, in terms left that question for a jury to decide.    The
appeal from such an order falls more properly under subdivision
3 of section 11 of the Code, and not under subdivision 1 of that
section ; and as the notice of appeal was not followed up by the
necessary steps to perfect such appeal, we cannot regard it as
properly before us, and therefore decide nothing as to whether
there was any error in refusing to vacate the order of arrest.
We may add, too, that even if that appeal could be regarded as
properly before us, it would be very difficult to see how we could
undertake to pass upon some of the errors imputed to Judge
Pressley in the argument here, as it does not appear that such
points were raised in the court below.

As to the several appeals from the orders of Judge Wither-spoon, it is scarcely necessary to consider them in detail, as we think it will sufficiently appear from what we shall have to say in regard to Judge Norton's decree that we do not think there was any error in the several orders granted by Judge Wither-spoon.

As we understand it, the material question involved in the appeal from Judge Norton's decree is, whether a person in custody under an execution, issued under section 308 of the Code, is entitled to apply for the benefit of the insolvent debtors' act. It seems to be admitted that under the General Statutes of 1872 this question would have to be answered in the affirmative, but it is claimed that as the law now stands, and as it has stood since the adoption of the General Statutes of 1882, the question must be answered in the negative. This claim is based upon the ground that so much of the General Statutes of 1872 as contemplated and provided for such an application by a person in arrest under an execution has been repealed by the provisions of the General Statutes of 1882, which provide only for persons in arrest under mesne process. Two questions are therefore presented : 1st. Whether the provisions of the General Statutes of 1872, covering the case of a person in arrest under execution, have been repealed by the provisions of the General Statutes of 1882. 2nd. If so, whether the provisions of the General Statutes of 1882, must necessarily be confined to persons in arrest under mesne process.

It is not and cannot be pretended that the provisions of the General Statutes of 1872 upon this subject have been *expressly* repealed, but it is contended that the provisions of the General Statutes of 1882 cover the whole subject matter, and thus supersede those of 1872. The only acts or parts of acts which are expressly repealed by the General Statutes of 1882 (see section 2739) are those "the provisions whereof are re-enacted in this act, or which are inconsistent with, or repugnant to, this act." Hence to show that there is an express repeal, it must first be shown either that the old law has been re-enacted, or that its provisions are inconsistent with or repugnant to the new. Now, it is quite clear that the decision of Judge Norton cannot stand

upon the ground that the provisions of the old law have not been re-enacted by the new; for if that were so, then no question could arise in this case of the right of the defendant to apply for the benefit of the insolvent debtors' act; and we think it equally clear that the provisions of the old law are neither inconsistent with nor repugnant to those of the new law.   There is certainly no inconsistency or repugnancy in declaring in 1872 that a person in arrest under either mesne or final process might apply for the benefit of the act, and again declaring in 1882 that a person in arrest under mesne process might so apply, saying nothing, as it is contended, about persons in arrest under final process. Such a second declaration might be unnecessary, but it certainly could not be regarded as inconsistent with or repugnant to the former declaration.   The most that could be said of it is, that it is a mere repetition of *a part* of the old law, without allusion to the balance.

It is, however, earnestly insisted that while the old law has not been expressly repealed, yet it has been repealed by implication; that the substitution of sections 2405 to 2423 (both inclusive) of General Statutes of 1882, for sections 9 to 14, and sections 22 to 32 of chapter CXXIII., of the General Statutes of 1872, with the change of phraseology there employed, shows that the legislature intended that the law after that time should be as then declared, and should no longer be as it was under the old sections for which the new have been substituted, and hence that the old law has been repealed by implication.   We must admit that there is great force in this view; but when we remember the well settled doctrine that repeals by implication are not favored, and that an implication to work a repeal must be a *necessary* one; and especially when we remember that the question involved in this case affects personal liberty, it behooves us to consider very carefully whether the implication under which a repeal is claimed in this case is a *necessary* one.

Conceding for the present that the change in the phraseology employed in the several sections of the General Statutes of 1882 from that used in the sections of the General Statutes of 1872, would render it necessary to construe the law of 1882, standing alone, so as to confine its operations to persons in arrest under

mesne process, does it follow necessarily that the legislature intended to deprive persons in arrest under final process of the benefits which they had previously enjoyed under the old law? If such had been the intention, nothing would have been easier than to have said so, and yet nothing of that kind is said. The most that can be said is that certain provisions found in the old law have been omitted from the new, without any reason or intimation of a reason for such omission, or of the intent in making it. Before we could conclude that the legislature intended by such omission to repeal all the provisions of the old law, we would be naturally led to inquire why such a distinction should be made between persons in arrest under mesne process and those under final process. It is difficult to conceive of any good reason for such a distinction.

We hesitate to conclude that the legislature, by this mere change of phraseology, intended to repeal a provision of the old law, by which a person in arrest under final process could apply for the benefit of the insolvent debtors' act, and thus establish a distinction between persons in arrest under mesne, and those in arrest under final, process, for which no sufficient reason can be given. And when we find, in addition to this, that the legislature has allowed this privilege to a person in arrest under final process to enforce the payment of a fine imposed for a violation of the criminal law (General Statutes, 2662), we can hardly suppose that they intended to deny the same privilege to a mere debtor, even though charged, but not yet convicted of fraud. Again, it will be observed that negative words are not used in the General Statutes of 1882. The privilege is not denied to any other class of persons, but even under the concession above made, it simply extends the privilege to those in arrest under mesne process, without any words denying it to others.

The views presented above are not without the support of authority. In the recent work of Endlich on the Interpretation of Statutes, the author, after having mentioned the general rule as to the effect of a revision or codification of statutes, with an intent to substitute the new legislation for the old, in repealing the old law by implication, proceeds in section 203 to qualify this rule as follows: "The rule of implied repeal is clearly inapplicable

where the revising statute declares what effect it is intended to have upon the former law ; as where it declares that it shall operate as a repeal of such provisions of earlier acts as are inconsistent with it, which is regarded as a declaration that it shall repeal only such provisions and leave unaffected such as are not inconsistent. The question of implied repeal being, after all, a question of implied intention—where the legislature expressly declares what effect, in the way of repeal, an act is intended to have, there is no room for implication * * * a revisal repealing all acts repugnant to the provisions thereof cannot affect statutes which are omitted, and which are not repugnant to its provisions." See also *Cape Girardeau County Court* v. *Hill*, 118 U. S., 68, where it was expressly held that the omission of a statute from the revision did not operate as a repeal of such statute.

The same author, in section 205, in speaking of the extent of the repeal by implication, says: "But in all matters of repeal resulting by implication from an affirmative act, except where the intent, appearing from a design to substitute the new law for the old *in toto*, is clearly to the contrary, it must be remembered that the repeal extends only so far as the provisions of the statutes affecting each other are inconsistent; the old law being in all other respects left in full force and effect"—citing *Wood* v. *United States*, 16 Peters, 342; *McCool* v. *Smith*, 1 Black, 459, and many other cases. And he adds, upon the authority of *Daviess* v. *Fairbairn*, 3 How., 636: "Whatever portions of the old law may be incorporated with the new, as being consistent with the latter, must be deemed to remain in force."

Now, as we have seen that the General Statutes, in section 2739, do expressly declare what effect, by way of repeal, they shall have upon the old law, there is no room for implication, and only such "acts and parts of acts the provisions whereof are re-enacted in this act, or which are inconsistent with or repugnant to this act" can be regarded as repealed. And if, as we have seen (*Cape Girardeau* v. *Hill, supra*), the omission of a statute from a revision does not operate a repeal, it would seem to follow that the mere omission of some of the provisions of the previous law, should not be regarded as a repeal of such provi-

sions, especially where such provisions may be consistently incor-
porated with the new, as in *Daviess* v. *Fairbairn, supra.*

But if we could reach the conclusion that the old law upon
this subject has been repealed by the new, the question would
still remain whether the provisions of the new law are to be
confined to persons in arrest under mesne process, leaving per-
sons in arrest under final process without any right to the privi-
leges conferred by General Statutes of 1882, in sections 2405–
2423. It is not to be denied that there are expressions in some
of those sections which, at first view, would seem to indicate that
the privileges therein provided for are extended only to those in
arrest under mesne process, but it seems to us that a more care-
ful scrutiny warrants us in saying that such was not the inten-
tion of the legislature. It does not seem to us that the reference
in section 2405 to chapter I., title 7, of the Code of Procedure
was designed to limit the provisions of that and the succeeding
sections to those who were arrested on mesne process, but was
rather designed to indicate the class of cases in which the benefit
of the provisions of those sections might be invoked. The defen-
dant is clearly a person arrested under the provisions of chapter
I., title 7, of the Code, for without those provisions he could not
lawfully be under arrest at all. It is true that, in a limited
sense, he is under arrest by virtue of the provisions of section 308
of the Code, but such arrest could not lawfully have been made
except by virtue of the provisions of sections 200 and 202, a part
of the chapter and title of the Code above referred to, and those
sections are expressly referred to in section 308 as authority for
the arrest, or rather as indicating the cases in which the arrest
therein provided for might be made. This reference, therefore,
to that chapter and title of the code does not necessarily limit the
provisions of chapter 96 of the General Statutes of 1882 to per-
sons in arrest under mesne process, as persons in arrest under
final process may also, in an enlarged sense, be regarded as per-
sons arrested by virtue of the provisions of chapter I., title 7, of
the Code.

Then, again, the language used in section 2406 gives counte-
nance to the idea that the intention was to embrace both classes
of persons—those in arrest under final process, as well as those

arrested under mesne process.   That section requires the clerk, upon the filing of the petition provided for in the preceding section, "to cause the petitioner to be brought before the court, and also the creditors at whose suit such person shall stand charged, as well as all other creditors to whom he shall be indebted, to be summoned," &c.   Now observe, the language is, not that the creditor at whose suit the petitioner was *arrested*, which would seem to have been the more appropriate word, if the intention was to confine the provision to those in arrest under mesne process; but the language is, "at whose suit such person shall stand *charged*," a word which certainly includes a person taken under execution, and in fact is more appropriate to one so arrested than to one arrested under mesne process merely.

It does not seem to us that section 207 of the Code as amended in 1882, affords any aid to the view contended for by the plaintiffs.   That section originally read as follows: "The defendant, at any time before execution, shall be discharged from the arrest, either upon giving bail or depositing the amount mentioned in the order of arrest, as provided in this chapter;" but in 1882 the following words were added to the section: "Or he may be discharged under the provisions of sections 2405 to 2423, inclusive, of the General Statutes."   It is claimed that the additional mode of obtaining a discharge provided for by the words added in 1882 must be qualified by the words "before execution" in the first part of the section as it originally stood, and that this shows that the intention was to confine the privilege afforded by sections 2405 to 2423 to persons under arrest under mesne process—that the application for the benefit of such privileges must be made "before execution."

In the first place, it will be observed that the section as originally read only provided for a discharge *"from the arrest,"* while the amendment provided for a discharge *from the debt*—a very different thing.   It was therefore quite natural and proper that the time within which the defendant should be entitled to a discharge from the arrest in the manner originally provided for should be limited by the words "before execution," but we can conceive of no reason why the application for a discharge of a totally different character and effect should be so limited.   The

object of the insolvent debtors' act being to afford relief to debtors who will surrender their entire property to their creditors, we can scarcely suppose that the legislature intended to offer such relief to a person who could only obtain it by practically admitting the justice of the claim made against him, when, perhaps, he might be able to show that the claim was unfounded, and to withhold it from one against whom a claim has been judicially established ; for that would attribute to the legislature the intention of saying to those against whom claims are made, whether just or unjust, you can only obtain the benefits of the insolvent debtors' act by waiving your legal right to contest the validity of such claims.    Such an intention we are not disposed to impute to the legislature, in the absence of any express declaration to that effect.

The result of the whole matter is, that inasmuch as the provisions of the General Statutes of 1882 are not inconsistent with, or repugnant to, the provisions of the General Statutes of 1872, so far as they relate to the class of persons who may be entitled to apply for the benefits of the insolvent debtors' act, the one cannot be regarded as repealing the other unless the same provisions are re-enacted by the later act; and inasmuch as we think the provisions of the General Statutes of 1882, sections 2405–2423, may, by a liberal construction, be regarded as re-enacting those provisions of the General Statutes of 1872 which relate to the class of persons who may be entitled to apply for the benefit of the insolvent debtors' act, the later act does repeal the former ; and hence we are of opinion that the defendant, though arrested under final process, was entitled to apply for the benefit of the insolvent debtors' act as re-enacted by the General Statutes of 1882, and that Judge Norton erred in ruling otherwise.

Under this view the other questions raised become immaterial, and need not therefore be considered.

The judgment of this court is, that the judgment of Judge Norton be reversed, and that the case be remanded for such further proceedings as may be necessary to carry out the views herein announced.