(98 App. Div. 383)

PEOPLE ex rel. U. S. STANDARD VOTING MACHINE CO. et al. v. CITY OF GENEVA et al.

(Supreme Court, Appellate Division, Fourth Department. November 15, 1904.)

1. MUNICIPAL CORPORATIONS—CHARTERS—PURCHASE OF SUPPLIES—APPROPRIATION OF MONEY.

The purchase of voting machines by the city of Geneva constituted an appropriation of money within its city charter (Laws 1897, p. 438, c. 360, § 51), prohibiting the appropriation of any money for any purpose except by an ordinance or resolution passed by an affirmative vote of two-thirds of all the members of the city council.

2. SAME—STATUTES—CONSTRUCTION.

General Election Law (Heydecker's Gen. Laws, p. 404, c. 6) § 163, authorizes the city council of any city other than New York to adopt voting machines, and section 166 provides that the local authorities on the adoption of a voting machine may provide for the payment thereof as they deem best. Held, that since such act did not provide any method of exercising the power prescribed, it did not modify or affect Geneva city charter (Laws 1897, p. 422, c. 360), requiring appropriations of money for any purpose to be made by ordinance or resolution passed by two-thirds of the city council.

3. SAME.

Geneva city charter (Laws 1897, p. 422, c. 360) requires all appropriations of money to be by ordinance or resolution on an affirmative vote of two-thirds of all the members of the city council, and gives the mayor the right to veto the same, whereupon the council may pass "such resolution" over the mayor's veto by a two-thirds vote of all the members thereof in office, and that the council shall consist of thirteen members (nine being two-thirds majority). On March 15, 1904, a resolution was reported recommending the purchase of six voting machines, which was passed by a vote of eight members only, and on April 5, 1904, ten members being present, three proposed resolutions were adopted by a vote of eight mem-

bers—one for the purchase of certain voting machines, another requiring the mayor to contract therefor, and a third directing the mayor and city clerk to issue bonds for the payment of such machines. These resolutions being vetoed, at a subsequent meeting a resolution directing the mayor to purchase such machines and to execute contracts therefor in accordance with the terms of the resolutions previously passed was adopted by a vote of nine. *Held*, that such subsequent resolution was not the resolution vetoed, and hence neither the passage thereof nor the passage of the other resolution authorized the purchase of such machines.

Appeal from Special Term, Monroe County.

Application by the people, on the relation of the United States Standard Voting Machine Company and another, for a writ of mandamus against the city of Geneva and others to compel the execution of a contract for the purchase of voting machines. From an order denying the application on the merits, relators appeal. Affirmed.

On the 2d day of June, 1904, an order was served upon all the defendants requiring them to show cause at a Special Term of the Supreme Court appointed to be held in the city of Rochester, N. Y., on the 4th day of June, 1904, why a peremptory writ of mandamus should not issue to compel the mayor and clerk of the city of Geneva, N. Y., to execute a contract for and on behalf of said city for the purchase from the relator company of six voting machines at the net price of $500 each, as directed by certain resolutions passed by the common council, or, in case any of the facts stated in the affidavits upon which said order to show cause was granted were denied, that an alternative writ issue to the end that the true facts might be ascertained and the appropriate relief then granted. Practically none of the facts were controverted; nevertheless the application was denied upon the merits, and the order appealed from was made.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

William S. Moore (Joseph W. Taylor, of counsel), for appellants.
W. Smith O'Brien, for respondents.

McLENNAN, P. J. The important questions raised by this appeal are: (1) Was an affirmative vote by two-thirds of defendant's common council necessary to legally authorize the mayor and clerk to execute the contract in question for and in behalf of the city? (2) Was any resolution adopted by a two-thirds vote of the common council, which was a valid authorization for said mayor and clerk to so execute such contract? (3) Was it necessary, in order to make the expenditure contemplated by the proposed contract, to submit the question to the taxpayers at a special election as provided by section 141 of the charter (Laws 1897, p. 470, c. 360)?

The city of Geneva is a city of the third class, incorporated by chapter 360, p. 422, of the Laws of 1897, which, as amended, constitutes its charter. The act provides, among other things, that the common council shall consist of thirteen members (nine being two-thirds), twelve aldermen and the president of such council, all of whom are elective officers. The mayor is given the right to veto all resolutions passed by the common council except such as relate to its organization, etc., within 10 days after their passage, and, in case such right is exercised, he is required to transmit to the council, in writing, his veto, and his reasons therefor. Within 10 days thereafter the common council

may pass such resolution over his veto by a vote of two-thirds of all the members thereof in office. Section 51 prohibits the appropriation of any money for any purpose except by an ordinance or resolution passed by an affirmative vote of two-thirds of all the members of the common council. Section 141 provides that whenever the common council shall resolve by an affirmative vote of two-thirds of its members that an extraordinary expenditure ought, for the benefit of the city, to be made, proceedings shall be taken to submit the question to the taxpayers at a special election.

It is clear that the purchase of the machines in question would constitute an appropriation of money within the express language and meaning of section 51 of the charter (Laws 1897, p. 438, c. 360), and therefore an affirmative vote of two-thirds (nine members) of the defendant's common council was necessary to legally authorize such expenditure, unless the section, as applied to the expenditure in question, has been changed by subsequent legislation. It is suggested that such change was effected by the general election law, being chapter 909, p. 893, of the Laws of 1896. Section 163 of that act (Heydecker's Gen. Laws, p. 404, c. 6) provides that the common council of any city other than the city of New York may adopt for use at elections voting machines. Section 165 provides that "the local authorities adopting a voting machine shall, as soon as practicable thereafter, provide for each polling place one or more voting machines." And section 166 provides: "The local authorities on the adoption and purchase of a voting machine may provide for the payment thereof in such manner as they deem for the best interest of the locality." Those provisions are not mandatory. The local authorities of any city are simply permitted to adopt and purchase voting machines for its use, and to make provision for payment of the same. No particular method of exercising such power is prescribed by the sections referred to, and therefore, as it involves an appropriation of money, it must be accomplished in accordance with the provisions of the charters of the respective cities; in the case of the defendant city by a resolution or ordinance of the common council adopted by an affirmative vote of at least two-thirds of its members. By the general election law authority was conferred upon the city of Geneva to purchase and use voting machines. It already had the power to purchase other property necessary for its use. To consummate either or any purchase an appropriation of money is, in effect, necessary, and the section of the charter to which attention has been called prescribes the only manner by which such an appropriation can be made. No different method was prescribed for the purchase or payment of voting machines than for the purchase or payment of any other property, except that the city was authorized to pay for such machines by issuing bonds; but such method of payment constituted an appropriation of money quite as effectively as if payment in cash had been authorized by the city. It was necessary, in order to legally authorize the purchase of the machines in question or the appropriation of the moneys necessary for the payment of the purchase price, that a resolution to that effect should have been adopted by the common council by

the affirmative vote of at least nine of its members. The resolutions relied upon by the relators as authorizing the purchase of the machines in question were not adopted in the manner required by the charter, and were therefore void.

At a regular meeting of the common council held on the 15th day of March, 1904, an alderman who was a member of the city property .committee "reported that the committee recommended the purchase of six United States Standard voting machines, one for each ward." Another alderman "moved that the report be accepted and recommendation adopted." Upon such motion eight aldermen voted in the affirmative and two in the negative. It does not appear that such resolution was ever submitted to the mayor. At a regular meeting of the common council held on the 5th day of April, 1904, the president of the council and nine of the aldermen being present, ten members in all, one of the aldermen, who was a member of the city property committee, submitted to the council as his report a communication from the United States Standard Voting Machine Company, which embodied the terms of a contract which it was proposed to enter into for the purchase by the defendant city from the relator of six voting machines for the net price of $3,000. Such communication also contained three proposed resolutions—one that the United States Standard voting machine be adopted for use at elections in the city of Geneva; another that the mayor and city clerk be directed to enter into a contract with the United States Standard Voting Machine Company for the purchase of six machines in accordance with the terms and conditions of the proposal made by said company; and the third directed the mayor and city clerk to issue bonds of the city, as therein provided, to the amount of $3,000, in payment for such machines. On motion of one of the aldermen these three resolutions (but all as one) were adopted by a vote of eight members, being less than two-thirds of all the members, there being thirteen members of the council. The relator Michaelson in his affidavit states as a conclusion that said resolutions were passed by a vote of at least two-thirds of all the members of said common council, giving no details of such vote. But it appears by the affidavit of the city clerk, who was also clerk of the council, and acting as such at the time, that there were only nine aldermen and the president of the common council present; that the president did not vote; that one of the aldermen—a Mr. Reynolds—voted in the negative; and that according to his best recollection Alderman Klopher also voted in the negative, leaving only seven affirmative votes. Alderman Reynolds makes an affidavit in which he states positively that he voted against the resolutions, and a Mr. Hanlon, a reporter for a local newspaper, who was present, makes an affidavit in which he states positively that two members of the council voted against the adoption of the resolutions, and the affidavit states that his recollection is fortified in that regard by a reference to his report of such meeting, which was published in the newspaper the following morning, in which it was stated that such resolution "was passed with only two dissenting votes." But if we assume that the affidavits present a question of fact in that

regard, we deem it of no importance, because the subsequent action of the common council did not conform to the requirements of the charter. Concededly, within 10 days after the adoption of the three resolutions referred to, the mayor vetoed the same, and transmitted such veto, and his reasons therefor in writing, to the common council. At a regular meeting held on the 19th day of April, 1904, such veto was presented to the council for its action. Instead of action being taken by the common council upon the veto, overruling or sustaining it, the relator Alderman Michaelson offered the following:

"Whereas, the common council of the city of Geneva did, by a resolution, direct the purchase of six voting machines for use in said city; and whereas, the mayor of said city has vetoed said resolutions: Now, be it resolved, that the mayor and city clerk of the said city be authorized and directed to purchase said machines and to execute contracts therefor in accordance with the terms and conditions of the resolution previously passed."

Such resolution was adopted, nine (two-thirds) of the aldermen voting in the affirmative and one in the negative. The resolution thus adopted was neither in form nor substance the same as the resolution which the mayor had vetoed. It did not contain even substantially all the provisions of the original resolution, and simply by reference to it, and without referring to the previous action of the common council, the power or authority conferred upon the mayor or the direction to him could not be ascertained. There is no provision in the charter which authorizes the common council to overrule the veto of the mayor in such a manner, substantially by adopting a new resolution not embodying the essential provisions of the first. By the terms of the charter the mayor was entitled to have such last-mentioned resolution submitted to him in order that he might exercise his right of veto in respect to it, and it could only become effective after having been so presented, and after the mayor's approval, or upon his failure to act upon it.

Tiedeman on Municipal Corporations (section 148) says:

"It is absolutely essential to the validity of municipal legislation as expressed in ordinance that it should be enacted by the proper body duly assembled, and in the precise form and manner, if any, prescribed by the municipal constitution and general laws from which it derives its authority. If the charter required the concurrence of the mayor as a part of the law-making power, a resolution or ordinance which is vetoed by him, or which lacks approval as manifested by his signature, or in some other proper manner, is a nullity."

In State v. Newark, 25 N. J. Law, 399, the court said:

"Again, the council may then at its next meeting proceed to reconsider the same [the resolution vetoed]. Reconsider what? Only the resolutions presented and returned. The council can only then pass the resolution presented and returned."

The effect of the resolution in question, if properly passed, would be to create a charge upon the municipality and upon the taxpayers therein, and a literal compliance with the statutory proceeding must clearly appear. Merritt v. Village of Portchester, 71 N. Y. 399, 27 Am. Rep. 47.

It is unnecessary to determine whether or not the purchase of the six machines in question would constitute an extraordinary expenditure within the meaning of section 141 of defendant's charter (Laws 1897, p. 470, c. 360), because by the sections of the general election law to which reference has been made the local authorities are expressly authorized to determine whether or not an expenditure for voting machines shall be made. As to such expenditure the taxpayers have nothing to say, whether it is ordinary or extraordinary, but the whole matter is left to the local authorities.

In conclusion it may be said that as a matter of discretion the application was properly denied. The decision of the learned court below was not put upon that ground, however, and we are not disposed to rest our decision upon that feature of the case, but conclude that the action of the common council in attempting to authorize the purchase of the machines in question did not comply with the requirements of the charter, and was, therefore, illegal and void.

Order affirmed, with costs. All concur, except SPRING, J., not voting.