## INDIANAPOLIS NORTHERN TRACTION COMPANY
### *v.* RAMER.

[No. 5,673.   Filed February 1, 1906.]

1.   STATUTES.—*In Pari Materia.*—*Railroads.*—*Eminent Domain.* —*Benefits.*—Article 41 of the civil code of 1852, 2 R. S. 1852, p. 188, §683 *et seq.,* §893 *et seq.* Burns 1901, §881 *et seq.* R. S. 1881, and 1 R. S. 1852, p. 409, §5134 *et seq.* Burns 1901, §3885 *et seq.* R. S. 1881, both providing for the assessment of damages in cases of railroads exercising the right of eminent domain, being enacted at the same session, are construed *in pari materia;* and damages may be legally assessed by either method, but in neither case can benefits be offset against damages sustained by the landowner.   p. 266.

Indianapolis, etc., Traction Co. *v.* Ramer—37 Ind. App. 264.

2. EASEMENTS.—*Additional Servitudes.—Street Railroads.*—A street railroad in a city street does not constitute an additional servitude upon the frontagers' lots. p. 270.

3. STATUTES.—*Construction.—In Pari Materia.*—Statutes upon the same general subject when constituting part of a general system of legislation, though they were not enacted at the same session, will be construed *in pari materia.* p. 271.

4. SAME.—*Interurban Railroads.—Eminent Domain.—Benefits.* —The act of 1901 (Acts 1901, p. 461, §5468a Burns 1901) and the amendatory act of 1903 (Acts 1903, p. 92), providing for the condemnation of land for rights of way for interurban railroads, and having substantially adopted the provisions of the statutes relating to the condemnation of lands by railroad companies, will be construed *in pari materia* with such statutes, and no benefits can be considered in estimating damages for the condemnation of rights of way for such interurban roads. p. 272.

5. EMINENT DOMAIN.—*Interurban Railroads.—Damages.—Elements.—Speculative.*—In determining the damages to a landowner by the appropriation of a right of way for an interurban railroad the jury should consider such owner's inconvenience thereby, loss in tillage, use and ·occupation of the land, annoyance by the operation of the road, exposure of plaintiff, family and stock to injury, and annoyance, inconvenience and danger in crossing from one part of the farm to the other, but speculative damages can not be given. p. 272.

6. SAME.—*Burden of Proof.*—The burden of proof in cases of eminent domain is upon the landowner to show his loss. p. 273.

From Cass Circuit Court; *John S. Lairy,* Judge.

Condemnation proceedings by the Indianapolis Northern Traction Company against William Ramer. From a judgment for defendant plaintiff appeals. *Affirmed.*

*J. A. Van Osdol, McConnell, Jenkines, Jenkines & Stuart,* for appellant.

*Nelson, Myers & Yarlott,* for appellee.

BLACK, P. J.—This was a proceeding brought by the appellant to appropriate a strip of land, part of a farm owned by the appellee, for the purpose of constructing, maintaining and operating thereon its interurban street railroad, extending from the city of Indianapolis to various other cities, and running through said farm; the instru-

ment of appropriation purporting to be founded on the statutes of this State, and especially on the act of March 11, 1901 (Acts 1901, p. 461, §5468a *et seq.* Burns 1901), and the act amendatory of certain sections thereof approved February 26, 1903 (Acts 1903, p. 92, §5468a *et seq.* Burns 1905).

The third instruction given to the jury at the request of the appellee was as follows: "In assessing the damages to the defendant's land, you can not take into consideration any benefits or supposed benefits to his land, or to the lands of others, or to the community or public in general, by reason of the railroad's being constructed and operated through the district." In the eighth instruction given it was, in part, said: "You are not allowed to take into account any supposed benefit to Ramer by reason of the location of the road in that vicinity, in mitigation of damages."

In urging upon our attention the action of the court in thus instructing, counsel have discussed the question whether, in assessing damages arising from the appropriation of part of a tract of land owned by one person for the way of an interurban electric railroad under the statute relating thereto, benefits to the remainder of the tract may be considered, or whether, in estimating such damages, no deduction should be made for any benefit that may be supposed to result to the owner from the contemplated work, as in the case of an appropriation for the way of a commercial or steam railroad.

1.

In our civil code of 1852 (2 R. S. 1852, p. 188, §683 *et seq.*)provisions were made for the "writ of assessment of damages." Section 706 (2 R. S. 1852, p. 193) was as follows: "When any person, corporation, or company design to construct a canal, or railroad, or turnpike, graded, McAdamized, or plank road, or bridge, or establish a ferry, as a work of public utility, although for private profit, being authorized by law to take real property therefor,

NOVEMBER TERM, 1905. 267

Indianapolis, etc., Traction Co. *v.* Ramer—37 Ind. App. 264.

such person, corporation or company, may have a writ of assessment of damages." The writ was to be issued to the sheriff, directing him to assess the damages by a jury. Section 711 (2 R. S. 1852, p. 193) provided: "In estimating any damages under this chapter [article], no deduction shall be made for any benefit that may be supposed to result to the owner, from the contemplated work." These provisions of 1852 were incorporated in the revised code of 1881. §893 *et seq.* Burns 1901, §881 *et seq.* R. S. 1881. In the statute of 1852, providing for the incorporation of railroad companies (1 R. S. 1852, p. 409, §5134 *et seq.* Burns 1901, §3885 *et seq.* R. S. 1881), any railroad company formed under that act, which is unable to agree as to the purchase of real estate for the construction of its track, turnouts, and water stations is given (§5159 Burns 1901, §3906 R. S. 1881) the right to acquire title thereto by the special proceeding prescribed in that act. For such purpose the company is required (§5160 Burns 1901, §3907 R. S. 1881, 1 R. S. 1852, p. 414, §15) to deposit with the clerk of the circuit court or other court of record of the county an instrument of appropriation, and to deliver to the landowner or his guardian a copy of such instrument. The court is required, upon the application of either party, to appoint, by warrant, three disinterested freeholders of the county to appraise the damages. The appraisers are required to consider the injury which the landowner may sustain by reason of such railroad, and to return their assessment of damages to the clerk of such court, setting forth the value of the property taken or injury done to the property, which they assess to the owner. On making payment to the clerk, or tender to the owner, of the amount assessed, the corporation is entitled to hold the interests in the land or materials so appropriated and the privilege of using any material on such roadway and within fifty feet on each side of the center thereof. The award of the arbitrators

may be reviewed by the court in which such proceedings are had on written exceptions filed by either party, though the company may take possession; and the proceedings on such appeal affect only the amount of compensation allowed.

In *McMahon* v. *Cincinnati, etc., R. Co.* (1854), 5 Ind. 413, a proceeding under section fifteen of this statute, it was said that this statute and the provisions of the civil code above mentioned were passed at the same session, relate to the same subject, and are not directly repugnant to each other, and that they may therefore be taken *in pari materia,* and considered as one enactment; that the assessment may be legally made by arbitrators appointed under the one act, or by jurors selected as prescribed in the other act, but that a deduction can not be made for any benefits that may be supposed to result to the landowner. See, also, *Evansville, etc., R. Co.* v. *Fitzpatrick* (1858), 10 Ind. 120.

In *White Water Valley R. Co.* v. *McClure* (1868), 29 Ind. 536, a like proceeding under the railroad statute, it was said concerning the provision of the code forbidding deduction for benefits: "It was evidently the intention of the legislature, in enacting this provision, to change the old rule of assessment in such cases, and to require that property taken by these corporations should be paid for without regard to any benefit or enhanced value of the residue of the owner's property by the facilities afforded by the construction of the road."

The statutory law concerning street railroads has developed, as have the uses of such railroads and the means and methods by which they are constructed and operated, from a simple beginning, for which sufficient provision was contained in the act of 1861 (Acts 1861, p. 75), relating to "street or horse" railroads upon and through the streets of cities and towns, whereby such companies were made capable of purchasing, holding and conveying the

real and personal property necessary for the construction and equipment of their roads, switches and side-tracks, and were required to construct their tracks upon the center or the side of the street so as to conform exactly to the established grade of the street.

We will not take space to refer particularly to the various enactments whereby the legislature has recognized and authorized suburban and interurban railways, and the change of motive power by the use of electricity. In 1901 the demand for electric interurban railways had increased to such an extent that it was deemed proper by the legislature to provide for their construction through lands not within the limits of a street or highway. Acts 1901, p. 461, §5468a Burns 1901. Additional provisions were, by amendment of this statute, made in 1903. Acts 1903, p. 92, §5468a *et seq.* Burns 1905. While, in these statutes, the companies concerned are designated as street railroad companies, and the statutes purport to create rights, powers, liabilities and restrictions for street railroad companies, with reference to their interurban street railroads or suburban street railroads, they adopt for the appropriation of private property the existing methods for such appropriations for railroad companies under the statute of 1852, and by such special proceedings authorize such a company for such a purpose to enter upon, take possession of, hold and use all such lands and real estate and other property as may be necessary for the construction, maintenance and operation of its railroads, railroad stations, depots, power-houses, shops, car barns, offices, lines for transmission of electricity for heat, light and power for such companies or the public. In the section providing the method of appropriation the word "railroad" is used in the same manner as in the statute of 1852, *supra,* and that section, except in some respects not here important, employs exactly the same language and prescribes the same proceedings as does the statute of 1852.

A company organized as a street railroad company, running its cars within cities and towns, and operating also an interurban railroad, must, within the cities and

2.    towns, cause its tracks to conform exactly to the established grades of the streets; and such use of the streets, with the consent of the municipal authorities, does not constitute an additional burden upon the real estate, and therefore, if the road be properly constructed and operated, no injury constituting ground of complaint is done to the abutting proprietors. *Mordhurst* v. *Ft. Wayne, etc., Traction Co.* (1904), 163 Ind. 268, 66 L. R. A. 105. Such use of a street is regarded as within the purposes for which it was dedicated or appropriated as a street. But an interurban railroad, not upon land already dedicated to public use, but upon and through the lands of individual proprietors, is something radically different. It is not the motive power which distinguishes a street railroad, in the original sense of the term, from a railroad in the sense of a commercial railroad as known before the introduction of electricity as a motive power for cars. The peculiar distinction of a street railroad, properly so called, is that it is so constructed and used that it does not constitute an additional burden upon the streets; its tracks conform to the grade of the street established for the ordinary uses of a street, and the operations of the railroad do not deprive the adjoining proprietor of the enjoyment of the use of the street in the ordinary manner. At least, the law remains thus, notwithstanding the developments whereby the original conditions of street railroads have been greatly modified. But when the legislature came to make provisions whereby street railroad companies, organized as such, and not as commercial railroads, may construct and operate interurban railroads running outside the limits of streets and highways, it made provisions for the appropriation of private property by the same methods as already existed for such appropriations by "railroad

companies," and, recognizing the essential difference between such interurban railroads and street railroads, it clearly indicated its intention to class such interurban railroads with commercial railroads for the purposes of such appropriations.

The rule of construction by the aid of statutes *in pari materia* does not restrict the court to the consideration of other legislation enacted on the same day or at the same session. The use of the rule, like all other methods of construction, is to ascertain the intention of the legislature by reference to other enactments relating to the same matter or subject—to the same person or thing, or to the same class of persons or things. Familiar illustrations are found in the interpretation and construction of progressive statutes relating to the rights of married women, or to the regulation of the liquor traffic. It is not necessary that one statute thus construed by the aid of another statute should expressly refer to the latter. In the cases of the two enactments of 1852, *supra,* relating to appropriations of property by railroad companies, one in the statute concerning such companies, and the other in the civil code, the construction of the former was aided, in the decisions above cited, by reference to the code provisions for a different method of assessment, approved at a later date, though enacted at the same session.

If, in comparing statutes, we discover the development of a system, and find therein, in a statute which we are seeking to construe, a modification of or addition to the system, having reference to changed conditions, and the adaptation to the system, so far as such changed conditions are concerned, of methods before applicable alone to another system of preexisting legislation, we may find it reasonable to conclude that the legislature framed such modification or addition with reference to the rules of construction already announced by the courts with regard to such other system, under conditions essentially the same as those contemplated in such modification or addition.

Now, while there are important differences between ordinary commercial railroads and interurban railroads in the appliances and uses now existing, yet in the matter of the appropriation of land for the construction of the ways, and as to the actual methods of construction of the roads through such appropriated lands and the injury thereby caused to the landowner, there is no essential difference. When the legislature in making provision for such new, but essentially identical, conditions, reënacted, with unimportant changes, the terms of the statute relating to such appropriations by "railroad" companies, and thereby applied the methods prescribed for railroad companies to street railroad companies with respect to their interurban railroads, we are of the opinion that the legislature should be regarded as making such adaptation with the intent that the damages to the landowner should be assessed as in case of assessments for the use of railroads under said preëxisting statutes, in the manner and with the limitations recognized by the courts as applicable to such appropriations for "railroads." This seems to be the only reasonable view to take of the matter, and we have already held to this effect, in *Indianapolis, etc., Traction Co.* v. *Dunn* (1906), *ante,* 248. We have not deemed it necessary to discuss the form of the instructions in question with a view to discriminate between general and special benefits, inasmuch as the statute excludes the consideration of benefits of either kind.

The points and authorities in the appellant's brief relate chiefly to the matter of the consideration of benefits. The appellant, however, also has presented objections to certain instructions concerning the assessment of damages, because therein the jury were permitted to take into consideration the inconvenience, if it appeared from the evidence, in the tillage, use and occupation of the farm, caused by the construction of the rail-

road across it; also the annoyance, if any, that might be occasioned to the occupants and owners of this land by reason of the proper operation of this railroad across the farm; also the exposure of the appellee and his family and his stock to injury; also the annoyance, inconvenience and danger, if any, in crossing the railroad from one portion of the farm to another.

The jury were expressly confined to the consideration of such and other matters as shown by the preponderance of the evidence, the burden of proof thereof being 6. stated to be upon the appellee, and were warned that remote, imaginary, uncertain, conjectural and speculative damages could not be allowed, and that the damages must be only such as would compensate the appellee for his actual pecuniary loss. The jury were also confined by the instructions to the consideration of such damages as resulted, or might reasonably result, from the appropriation of a part of the land and the proper construction, maintenance and operation of the railroad thereon. Taking the instructions as a whole, and having regard to the sense in which the several parts must have been taken by the jury, we are unable to pronounce erroneous the portions criticised by appellant. See *Indianapolis, etc., Traction Co.* v. *Dunn, supra; LaFayette Plankroad Co.* v. *New Albany, etc., R. Co.* (1859), 13 Ind. 90, 92, 74 Am. Dec. 246; *Grand Rapids, etc., R. Co.* v. *Horn* (1873), 41 Ind. 479; *LaFayette, etc., R. Co.* v. *Murdock* (1879), 68 Ind. 137; *Chicago, etc., R. Co.* v. *Hunter* (1891), 128 Ind. 213; *Rehman* v. *New Albany, etc., R. Co.* (1893), 8 Ind. App. 200; *Chicago, etc., R. Co.* v. *Patterson* (1901), 26 Ind. App. 295; *Chicago, etc., R. Co.* v. *Winslow* (1901), 27 Ind. App. 316.

Judgment affirmed.

Roby, C. J., Myers, Robinson and Wiley, JJ., concur. Comstock, J., absent.