507 P.2d 1014

**STATE of Arizona, Appellee,**

v.

**Michael Freeland MOORE, Appellant.**

**No. 1 CA–CR 486.**

Court of Appeals of Arizona,
Division 1,
Department A.

March 22, 1973.

Gary K. Nelson, Atty. Gen., by Peter Van Orman, Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Public Defender, by James H. Kemper, Deputy Public Defender, Phoenix, for appellant.

DONOFRIO, Presiding Judge.

This is an appeal from a judgment and conviction on stipulated facts of the crime of possession of a dangerous drug in violation of A.R.S. §§ 32–1970 subsec. C, par. 1, 32–1996 and 32–1901, designated by the court as a misdemeanor, and a one-year probation granted thereon.

The information charged that on February 16, 1971, Michael Freeland Moore possessed a barbiturate acid derivative, "not obtained upon a valid prescription order from a medical practitioner and the drug was not held in the original container in which it was delivered  . . . "

The case was submitted to the trial court upon the following stipulated facts:

"On or about February 16, 1971, the defendant, Michael Freeland Moore, was observed by Patrolman R. L. Terry, a

Highway Patrolman, driving erratically from the freeway south of McDowell Road, Phoenix, Maricopa County, Arizona. Patrolman Terry stopped the defendant on suspicion of driving while intoxicated (A.R.S. § 28–692) and for unsafe lane changes (A.R.S. § 28–729). After determining that, in his opinion, the suspect was driving while intoxicated, the defendant was placed under arrest by Patrolman Terry, his hands handcuffed behind his back, and searched. In his right front pants pocket, Patrolman Terry found a plastic prescription vial containing 19 blue and white capsules. These capsules were submitted to the Department of Public Safety Crime Laboratory and Clifford C. Webber, a qualified chemist, analysed [sic] them and found them to contain Carbrital, a barbituric acid derivative, and dangerous drug. The container in which the capsules were found is a standard drug store prescription container, bearing a proper label. This prescription was prescribed by S. R. Caniglia, M.D., on the 11th day of September, 1968, and the original prescription was issued to a Mrs. Ludwig. At the time of his arrest, the drugs found in the defendant's pocket were in the original container and were the original drugs prescribed by Dr. Caniglia to Mrs. Ludwig. This prescription was filled by Mr. Marvin Walker, a registered, licensed pharmacist employed by Skaggs Pharmacy, pursuant to prescription number 81945, and the label placed on the prescription vial by Mr. Walker at the time the prescription was filled in 1968 is the same label that was on the container at the time of defendant's arrest.

"The defendant is presently charged with unlawfully possessing a dangerous drug, to wit: a barbituric acid derivative, not obtained upon a valid prescription order from a medical practitioner and not held in the original container in which it was delivered, all in violation of A.R.S. § 32–1970(c)(1), Section 32–1996 and Section 32–1901.

"The foregoing facts are those which the undersigned agree would be presented at a trial in the above entitled matter."

In addition to these facts, the transcript of the preliminary hearing was previously received into evidence. At the preliminary hearing the arresting officer testified that after the defendant was stopped he admitted he had been drinking, and in an effort to explain his possession of the dangerous drugs, said that they were part of a "plant." The trial court took the matter under advisement and later found the defendant guilty, stating the following:

". . . the Court having reviewed the stipulated set of facts and having heard the arguments of counsel and having been advised that the Defendant was a stranger to Mrs. Ludwig, the Court finds the [sic] implicit in A.R.S. Sec. 32–1970(c)(1) is the implication that the person possessing any dangerous drug must be the person who obtained the dangerour [sic] drug upon a valid prescription ordered from a medical practitioner and holds the drug in the original container in which it was delivered to such person and THE COURT finds therefore, the Defendant IS GUILTY of Possession of Dangerous Drugs."

The question presented for our determination is whether, under the facts herein, possession by the defendant of an unidentified third person's validly prescribed dangerous drugs in their original container is a prohibited act under A.R.S. § 32–1970, subsec. C, par. 1.

Section 32–1970, subsec. C, par. 1 provides:

"C. No person, other than a person described in subsections A and B of this section, shall possess: 1. Any dangerous drug unless such drug was obtained upon a valid prescription order from a medical practitioner and the drug is held in the original container in which it was delivered."

Defendant contends the stipulated facts show that the defendant was not guilty of

this section as a matter of law and that the evidence was therefore insufficient to sustain the judgment of conviction. It is defendant's position that the statute is clear on its face that there is no violation where the drugs are properly issued upon a prescription and still held in the original container, regardless of whether the possessor is the person on whose behalf the prescription was issued. On the other hand, the State contends that, taking the statutes as a whole, it is the clear intention of the Legislature that possession by an unauthorized person, such as the defendant in this case, is prohibited by § 32–1970, subsec. C, par. 1.

In other words, defendant argues that by the clear wording of the statute it was not the intention of the Legislature to make a crime out of the mere possession by one other than the patient, such as the defendant, of dangerous drugs which are issued upon a valid prescription if they are in their original container. Defendant adds also that if the State's contention is accepted here, then every time someone with a sick spouse goes to the drugstore to pick up a vial of pills for his mate he would be in violation of the statute. We do not agree.

It is a fundamental rule of statutory construction to seek the intent of the Legislature and to give effect to that intention. Automatic R. M. Co., Inc., v. Pima County, 36 Ariz. 367, 285 P. 1034 (1930). We believe the analysis made of the law by the State that a complete reading of the statutes involved shows that the Legislature intended to prohibit all persons from possessing dangerous drugs except those persons who are specifically authorized.

The Sections pertinent to the issues herein are found in Chapter 18 (Pharmacy), Article 3 (Regulation), 10 A.R.S., Sections 32–1969, et seq.

A.R.S. § 32–1970, subsec. B, par. 5 permits these authorized persons to engage agents or employees to carry out their legitimate purposes.

A.R.S. § 32–1970, subsec. B, par. 5 provides:

"An employee or agent of any person described in paragraphs 1 through 4 of this subsection, and a registered nurse or medical technician under the supervision of a medical practitioner, while such employee, registered nurse, or medical technician is acting in the course of his [own] professional practice or employment, and not on his own account."

A reading of § 32–1970, subsections A and B, in its entirety shows the intention of the Legislature that an agent may not divert the flow of dangerous drugs from their proper channel, even though they originally sprang from an unpolluted source. A.R.S. § 32–1970, subsec. C is closely connected with the foregoing subsections and this same legislative intent would apply. Therefore, even though drugs are obtained from an unpolluted legal source by prescription, these drugs may not be diverted for use by anyone other than the person for whom the drug was prescribed, as such use by another would be unlawful.

To answer defendant's argument, i.e., if his interpretation is not accepted then a husband who picks up his wife's prescription for her at the drugstore would be guilty of an offense, we need quote only the following parts of § 32–1969 (another Section in Chapter 18, Pharmacy, denouncing unlawful possession) which would indicate that he would be her agent and exempted from the Act:

"A. *It is unlawful for any person to* sell, offer for sale, barter or otherwise dispose of, or *be in possession of any prescription-only drugs, except under the following conditions*:

\*   \*   \*   \*   \*   \*

"B. A person or *his agent* to whom or for whose use any prescription-only drug has been prescribed by a medical practitioner or dispensed by a pharmacist, as authorized under the provisions of this chapter, \* \* \* may lawfully possess it only when held in the container in which

 

it was delivered to him by the person dispensing such drug." (Emphasis supplied.)

A reading of the Sections in Chapter 18 shows that the Legislature was speaking of three classes of people, namely,

1. Those specifically authorized to possess drugs.
2. Agents acting under proper authority.
3. All other persons (meaning unauthorized, as in several Sections it reads, "no person * * * shall").

 Fitting the instant case into the picture, Mrs. Ludwig was the person specifically authorized to possess the drug. Defendant was not an authorized person and was not acting as an agent for Mrs. Ludwig as provided in § 32–1969, subsec. B. Defendant falls in class 3, as he is one of the "no person shall" class.

Analyzing the evidence in the light most favorable to supporting the judgment, we would say that defendant, by his statement that the pills were part of a plant, disclaimed any relationship with the person who had lawfully obtained the drug. This, together with the fact that the name on the prescription and defendant's name were different, indicates a lack of relationship and therefore no agency. The fact that defendant and Mrs. Ludwig were strangers proved to be a key factor which the trial judge weighed in making his decision. The facts support a conviction of the crime charged.

We would agree that a husband going to the drugstore for his wife's prescription would not be committing a crime. Of significance in determining this is the use of the word "agent" in § 32–1969, subsec. B. Although the State is not required to establish that defendant did not come within an exception provided in the law, State v. Quandt, 17 Ariz.App. 33, 495 P.2d 158 (1972), the stipulated facts nevertheless negated the agency when they showed that the prescription was over two years old

and that the defendant did not know or have any connection with Mrs. Ludwig. The trial court's order specifically pointed out that defendant was a stranger to Mrs. Ludwig. Had defendant established agency, his conviction would not have followed because of this defense.

Although defendant could have assumed his responsibility to prove himself authorized to have possession of the prescription, he did not come forward with any evidence. In fact, he negated any such defense by saying that it was a "plant."

Affirmed.

OGG and STEVENS, JJ., concur.