THE PEOPLE ex rel. Morton D. Hull et al. Petitioners, vs.
HOWARD S. TAYLOR et al. Respondents.

*Opinion filed December 17, 1912—Rehearing denied Feb. 6, 1913.*

1. ELECTIONS—*how a vote for representatives may be divided.*
Under sections 7 and 8 of article 4 of the constitution, concern-
ing minority representation, a voter has a right to divide his vote
among candidates for representative in the General Assembly as
he sees fit, and he may cast one vote for each of three candidates,
three votes for one candidate, one and one-half votes for each of
two candidates, or one vote for one candidate and two for another.

2. SAME—*discretionary power of voting machine commission-
ers is not absolutely final.* The discretionary power of voting ma-
chine commissioners to determine what voting machine complies
with the requirement of the law concerning the time consumed in
casting a vote thereon is not absolutely final, and if such power
is exercised so as to produce a manifest injustice, the courts may
interfere to require its due exercise and prevent a public wrong.

3. SAME—*when mandamus will lie to compel furnishing of bal-
lots and ballot-boxes.* If it is clearly shown that votes cannot, in
fact, be cast upon the voting machines intended to be used at an ·
election within the time required by law and that the use of the
machines will result in some voters being deprived of their votes,
such injustice will authorize the awarding of a writ of *mandamus*
to compel the election officials to furnish ballots and ballot-boxes.

4. SAME—*what is meant by time-limit provision of the Voting
Machine law.* The provision of the Voting Machine law of 1903
(Laws of 1903, p. 178,) requiring such machines to be so con-
structed that "each elector can understandingly and within the
period of one minute cast his vote for all candidates of his choice,"
does not mean every elector, regardless of his physical or mental
condition, but does mean every elector of ordinary intelligence,
having the reasonable use of his faculties and members.

5. SAME—*when voting machine does not comply with the law.*
In order that a voting machine may comply with the law, it is
not enough that trained experts or persons voting straight tickets
may be able to cast their votes within the one minute allowed by
law, but it is necessary that the average voter who desires to vote
for candidates upon two or more of the various tickets can by
reasonable effort be surely able to cast his vote within such time.

6. SAME—*Voting Machine law of 1903 is not unconstitutional.*
The Voting Machine law of 1903 (Laws of 1903, p. 178,) is not
unconstitutional. (*Lynch* v. *Malley,* 215 Ill. 574, adhered to.)

7. MANDAMUS—*laches of individual does not bar suit involving the public interest.* A suit to compel ballots and ballot boxes to be furnished at an election in order to prevent an alleged public wrong which will result from the use of voting machines alone is a matter of public concern, and the public right is not barred by the *laches* or acquiescence of individuals or conduct of a relator.

ORIGINAL petition for *madamus.*

LOESCH, SCOFIELD & LOESCH, FREDERICK Z. MARX, MORTON D. HULL, and FRANKLIN S. CATLIN, (FRANK J. LOESCH, of counsel,) for petitioners.

CHARLES H. MITCHELL, JOHN J. HERRICK, and W. W. WHEELOCK, for respondents.

Mr. CHIEF JUSTICE DUNN delivered the opinion of the court:

At the October term a petition was filed for a writ of *mandamus* against the respondents, who are the board of election commissioners of the city of Chicago and *ex-officio* commissioners of elections of the town of Cicero, requiring them to furnish ballots and ballot-boxes, in accordance with the requirements of the Ballot law, for the election to be held on November 5, 1912, in the city of Chicago and the town of Cicero. The relators are electors of the city of Chicago and candidates from different districts for representative in the General Assembly. The petition alleged the adoption in the city of Chicago of the "act to provide for the use of voting machines at elections," etc., approved May 14, 1903; (Hurd's Stat. 1911, p. 1065;) the appointment of the board of voting machine commissioners; their report recommending the Empire voting machine as complying with the law, and the intention of the respondents to install 460 of these machines in certain election precincts for use at the general election to be held on November 5, 1912. Objections are alleged against the use of

257 — 13

the machine. It is alleged that the machine does not afford an opportunity to each voter to vote for the candidates of his choice for the office of presidential elector but only allows him to vote for all or none of the electors under one party name, and, if he chooses to vote for other candidates than those indicated by a party name, only provides space for not exceeding seven names, and allows him to vote for those seven and no others. It is further averred that in voting for representatives in the General Assembly the law compels the voter to cast three votes and limits him to casting one vote for each of three candidates, three votes for one candidate or one and a half votes for each of two candidates, while in addition to these three ways the machine permits him to cast two votes for one candidate and one for another, or to cast one vote or two votes only. A further objection is that each elector cannot understandingly and within one minute cast his vote. It is also insisted that the law, as a whole, is unconstitutional.

An answer was filed by the respondents, alleging the appointment of a board of voting machine commissioners, their examination of the Empire voting machine and report that it complied with the requirements of the act, and the purchase by the respondents of a number of the machines. It was alleged that the machines were used at the primary elections in April, 1912, at which the relators were nominated, and the relators knew of the purchase of the machines, their use at the primary election and of the respondents' intention to have them used at the November election, 1912, many months before the petition was filed and in time to have applied at the June term of this court for the writ of *mandamus* now sought, but instead of filing their petition then, they waited until the October term, only twenty-two days before the election. It was averred that by the use of paster printed ballots which will be furnished at the election, a voter can divide his vote for

presidential electors in any way he may choose; that the method of voting for representatives is in accordance with the constitutional and legal method of voting for such officers, and that any voter can understandingly and intelligently cast his vote by the use of said machine, upon all candidates, questions and propositions to be voted for, within one minute.

Issue was joined as to the allegation in the petition that the voter cannot intelligently and understandingly cast his vote by the use of the machine within one minute, and the remainder of the answer was demurred to.

The demurrer admits the averment of the answer that ample opportunity is afforded by the voting machine to vote for the full number of electoral candidates otherwise than by writing in their names, viz., by means of pasters made to fit the opening provided in the machine for that purpose, having the back gummed and having printed on the face a list of the electoral candidates of a party, by the use of one or more of which pasters the voter may vote for any combination of electoral candidates he may choose to vote for. This appears to be a sufficient answer to the averments of the petition as to the vote for electors.

The answer admits that votes may be cast for candidates for representative in the General Assembly in the manner stated in the petition, and insists that such method is not only lawful, but that under the constitution the voter cannot be deprived of the right to divide his vote for representative in any of the ways possible by the use of the machine,—that is, one vote for each of three candidates, three votes for one candidate, one and a half votes for each of two candidates, or one vote for one candidate and two for another. The constitutional provision is found in sections 7 and 8 of article 4. It authorizes the voter to cast as many votes for one candidate as there are representatives to be elected, to divide his votes among the candidates as he shall see fit, or to divide equal parts of

his votes among the candidates as he shall see fit. This gives the right to cast two votes for one candidate and one for another if the voter sees fit to do so, and the objection made to the machine on account of its permitting this method of voting is therefore of no force.

On the issue of fact it is averred, on the one hand, that it will be impossible for each elector understandingly within one minute to cast his vote by said voting machine for all the candidates of his choice and for or against all public policy questions and proposed bond issues, and on the other hand, that it is easily possible for each elector understandingly within one minute to cast his vote by said machine for all the candidates of his choice and for or against all public policy questions and proposed bond issues. It is insisted on behalf of the respondents that the action of the board of voting machine commissioners and the board of election commissioners in determining that the voting machines complied with the requirements of the law in this particular should be held conclusive upon this question; that the powers conferred on these officers require the exercise of judgment and are discretionary in their character, and that their determination of the question of fact is final. If a discretionary power is exercised so as to produce a manifest injustice, the courts may interfere to require its due exercise and prevent a public wrong. (*Village of Glencoe* v. *People,* 78 Ill. 382; *Illinois State Board of Dental Examiners* v. *People,* 123 id. 227.) If votes cannot, in fact, be cast upon the machines within the time allowed by law, their use will result in some voters being deprived of their votes. Such an injustice, if clearly shown, will justify the interference of the court to afford a remedy by *mandamus.* It is alleged in the answer that the voting machines in question have been in satisfactory use in various cities of different States for a number of years, and that arrangements have been made for the instruction on the day of election, and before that day, of

voters in the use of the machine. On the argument of the cause one of the machines was present and demonstrations of the manner of its use were made by various persons. Fifty-three officers were to be voted for besides the presidential electors, and there were three public policy questions and four propositions to issue bonds. There were party nominations by six parties, although one was for a part, only, of the offices. It is easy to vote a straight party ticket on the machine. It can be done in a few seconds. An expert in the use of the machine can vote a split ticket, even as large as the ticket at the November election, in one minute. The requirement of the statute, however, is that "each elector can, understandingly and within the period of one minute, cast his vote for all candidates of his choice." "Each elector" does not mean here absolutely every elector, for a voter may be blind or crippled so as to be physically unable to use the machine, and the statute provides for such a condition, but the term does include at least every elector of ordinary intelligence having the reasonable use of his faculties and members. If the voter must be a trained expert,—if he must be a man of more than ordinary intelligence, keenness of vision or alertness of motion,—in order to be able to vote as he wishes within a minute, then the machine which requires these things of him does not comply with the law. As a matter of fact, we find that the machine does not comply with the law in enabling the voter understandingly to cast his vote in one minute at the election of November 5, 1912, at which the ballot will contain the names of so many candidates and so many propositions for the choice of the voter. It is not enough that one voter or many voters can possibly, by strenuous effort, vote for the candidates they desire in one minute. It is necessary, at least, that the average voter who wishes to vote for candidates upon two or more or all of the various tickets can by a reasonable effort be surely able to cast the vote he desires to cast, within the time al-

lowed him by law for doing so. We take into consideration the action and finding of the board of voting machine commissioners and the board of election commissioners as well as our own observation, and we are constrained to find that the machines do not comply with the law in respect to the time within which votes can be cast at the election of November 5, 1912, and that their use at such election, if voters were allowed only one minute to vote, would result in the disfranchisement of many electors.

It is insisted that the relators have been guilty of *laches,* and that with knowledge of the making of the contract for the purchase of the machines at great expense, and of the intention to install them, they took no action for several months but waited until a few days before the election to begin their action. *Laches* or estoppel on the part of the relators, however, has nothing to do with this proceeding. Though the relators have a special interest, the object of the suit is not a matter of individual interest but of public concern, and any citizen might have become the relator in a suit to enforce the public right. (*County of Pike* v. *People,* 11 Ill. 202; *People* v. *Board of Education,* 127 id. 613.) Such a suit involving the public interest is not barred by the *laches* or acquiescence of individuals or the conduct of a relator. *People* v. *Anderson,* 239 Ill. 266; *People* v. *Burns,* 212 id. 227; *People* v. *Gary,* 196 id. 310.

The petitioners question the constitutionality of the Voting Machine law, but we adhere to the decision in *Lynch* v. *Malley,* 215 Ill. 574.

The writ of *mandamus* will be awarded as asked for in the petition.                *Writ awarded.*