## THE GAMEWELL COMPANY *v.* CITY AND COUNTY OF HONOLULU.

### No. 2191.

ARGUED MARCH 6, 1936.                    DECIDED JUNE 10, 1936.

COKE, C. J., BANKS, J., AND CIRCUIT JUDGE BROOKS IN PLACE OF PETERS, J., DISQUALIFIED.

OPINION OF THE COURT BY COKE, C. J.

To assist the board of supervisors of the City and County of Honolulu in the furtherance of a preconceived plan to have installed within the municipality a police flashlight system and additional police call boxes and fire alarm circuits and equipment, the legislature passed what is known as Act 38 of the Laws of the Second Special Session of 1932, which reads:

"An Act to Amend Chapter 118, as Amended, of the Revised Laws of Hawaii 1925, by Amending Section 1738 Thereof, as Amended. Relating to Municipal Government and Particularly to Police Matters.

"*Be it Enacted by the Legislature of the Territory of Hawaii:*

"Section 1. Section 1738, as amended, of the Revised Laws of Hawaii 1925, is hereby amended by adding thereto at the end thereof a new paragraph to read as follows:

" 'The board of supervisors of the city and county of Honolulu is hereby authorized to enter into a contract for a period not in excess of ten years for the leasing with or without an option to purchase of a police flash light system and additional police call box and/or fire alarm circuits and equipment and for such purpose may use the permanent improvement fund.' "

The Act became effective May 10, 1932.

On May 19 of the same year the city and county published a call for sealed tenders for furnishing and installing the system, including the police call boxes and fire alarm circuits and equipment "to be leased to the City and County of Honolulu for a period of ten (10) years, with option to buy, in accordance with provisions of Act

38, Special Session 1932." In response to the call the appellant, the Gamewell Company, submitted its proposal to install the system and to lease the same to the city and county for a period of ten years, rent to be paid by the city and county in the following manner: $50,000 upon completion and acceptance by the city of the system, $24,410 each year for nine years thereafter, and a final payment of $24,370 at the end of the tenth year. The proposal recites that "the City and County of Honolulu, paying the rentals as hereinabove provided, shall be entitled, at the expiration of the term of said lease, to purchase the material, apparatus and work, comprising said system, from the said undersigned [the company] for the sum of one dollar (1.00), and the said sum of one dollar ($1.00) shall be accepted * * * in full payment therefor." The proposal further recites that the city and county shall have the right to purchase the system at any time during the term of the lease by paying to the company the total amount of rent less a fixed rate of discount on unaccrued installments of rent. On June 24, 1932, the city and county and the company entered into a contract embodying the terms of the proposal and bid.

The board of supervisors made no appropriation of funds for the purpose of meeting any of the payments provided for in the contract prior to its execution nor did the auditor of the city and county endorse upon the contract his certificate that there was an available unexpended appropriation sufficient to cover the amount required for such payments or any of them. In compliance with the terms of the contract the company proceeded to install the system and upon its completion, on May 18, 1933, the city and county took over the possession and control of the system. The company thereupon demanded the initial payment of $50,000 claimed to be due it under the terms of the contract but the city and county refused

to comply with the demand and on September 13, 1933, the company instituted an action in the court below for the recovery of the sum theretofore demanded.

After the issues were made up and the cause came on for trial, the parties, with the approval of the court, entered into a stipulation agreeing that the issue involving the validity of the contract should be tried and determined by the trial judge *in limine*. Evidence was taken bearing upon this issue after which the circuit judge, by written decision, held that the contract was *ultra vires,* invalid and illegal. The company having duly filed its exceptions to the decision, the trial judge has certified the cause to this court on an interlocutory bill of exceptions.

We conclude, from a review of the decision appealed from, that the court below held the contract to be void upon the grounds, *inter alia,* (1) that it violates the provisions of section 2178, R. L. 1925, which provides that no board of supervisors or officers of the city and county shall expend or aid or participate in expending during any period of time for any purpose any sum in the absence of an appropriation for such purpose for the period in question, and (2) that it bears no endorsement thereon of the auditor of the city and county certifying that there was available unexpended appropriation or balance of an appropriation over and above all outstanding contracts sufficient to cover the amount required by the contract and therefore violates section 1479, R. L. 1925. In addition to the foregoing, and other grounds, counsel for the city and county urge the invalidity of the contract on the theory that the contract is in effect a conditional sales agreement and the execution of it exceeded the power granted by Act 38 which merely authorized the board of supervisors to contract for a lease for a definite term of years with or without an option to purchase and does not

include the power or authority to execute a conditional sales contract containing an option to purchase.

Whether the contract in question is called a "lease with option to purchase," a "right of purchase lease," a "conditional sales agreement," or whether it embodies the elements of all three classes of documents, we think is of no special importance. It is the effect of the document as ascertained from its provisions, and not its name, which fixes its status. It is clear enough that the contract created reciprocal obligations, namely, the obligation on the part of the company to install the system within a certain fixed period of time and to deliver the same thus installed to the possession and control of the city and county whereupon the city and county became obligated to pay to the company the sum of $50,000 and thereafter to pay annually to the company, for the period of ten years, the sum of $24,410 and upon the payment of the last installment to be entitled to the ownership of the system, or to become such owner at an earlier period by exercising its option to pay to the company all undischarged installments. It therefore seems clear enough that the object sought to be accomplished by the contract was the sale of the system by the company to the city and county and the purchase thereof by the city and county for the consideration named. Unlike the usual municipal contracts for supplying electric lights, currents, water, etc., the Gamewell contract provided for the payment of the full consideration for the property within the period of ten years so that nothing remained at that time to be done by either party except the formal transfer of title from the company to the city and county. The first installment of $50,000 which was to be paid upon the completion of the system was not rent. It was a payment on the purchase price of the property. And, while the subsequent installments are referred to in the contract as rent,

we think they also would constitute partial payments to be applied toward the acquisition of the title to the system.

At the time the contract was entered into there existed in the Territory of Hawaii two statutes, both bearing directly upon the issue here involved. One is section 2178, R. L. 1925. This statute provides: "No board of supervisors or other board, committee, department, bureau, officer or employee of any county or city and county shall expend, or aid or participate in expending, during any period of time for any purpose, any sum in the absence of an appropriation for such purpose for such period, or any sum in excess of an appropriation, if any, for such purpose for such period, or incur, authorize or contract, or aid or participate in incurring, authorizing or contracting, during any fiscal year, liabilities or obligations, whether payable during such fiscal year or not, for any or all purposes, in excess of the amount of money available for such purposes for such county or city and county during such year, and any person who shall violate any provision of this section shall be punished by a fine of not more than one thousand dollars or by imprisonment for not more than one year, or by both such fine and imprisonment."

The other is section 1479, R. L. 1925. It provides: "No such contract shall be binding or of any force unless the auditor of the Territory, county or city and county, as the case may be, shall indorse thereon his certificate that there is an available unexpended appropriation or balance of an appropriation over and above all outstanding contracts sufficient to cover the amount required by such contract." It will thus be seen that the legislature, by express mandatory statutes, placed the municipality upon a strict "pay-as-you-go" basis. If, however, the municipality became embarrassed for the lack of funds

required for needful expenditures, it could, with the approval of the President of the United States, borrow upon the municipal credit up to five per cent of the assessed value of the property located within its confines. See section 55, Organic Act.

It is conceded by counsel representing the company that the total amount payable by the city and county during the ten-year period was in excess of any funds available for the purpose at the time the contract was executed and they further concede that no appropriation for the payment of the amount required to meet the financial obligations created by the contract or any part thereof was made by the board of supervisors prior to entering into the contract nor was any certificate required under the provision of the statute ever issued by the city and county auditor.

There is a wealth of judicial precedent holding that statutes similar to those locally in force are for the purpose of safeguarding and protecting the municipality and its taxpayers, and are mandatory in character and any contract entered into by a governmental agency in defiance of their provisions is *ultra vires* and void. For application of the rule where statute requires a prior appropriation, see *Empire Voting Mach. Co.* v. *City of Chicago,* 267 Fed. 162; *Smith Canal or Ditch Co.* v. *City of Denver,* 36 Pac. 844; *Commonwealth* v. *Foster,* 64 Atl. 367; *City of Indianapolis* v. *Wann,* 42 N. E. 901. That the absence of an endorsement required by the statute renders the contract void is held in *Continental Const. Co.* v. *City of Altoona,* 92 Fed. 822; *Pollok* v. *City of San Diego,* 50 Pac. 769; *City of Findlay* v. *Pendleton,* 56 N. E. 649. And that a contract in violation of a statutory inhibition against incurring liability in excess of the amount of money available invalidates the contract, is held in *Michael* v. *City of Atoka,* 185 Pac. 96; *O'Neil Engineering*

*Co.* v. *Incorporated Town of Ryan,* 124 Pac. 19; *City of La Porte* v. *Gamewell Fire-Alarm Tel. Co.,* 45 N. E. 588.

We think it must be conceded that as the statutes existed prior to Act 38 the city and county could not legally have entered into the contract with the company in the absence of a prior appropriation to meet the amount of the obligation nor in the absence of a certificate of the auditor that the money required was available as provided in sections 2178 and 1479, R. L. 1925. It is the contention of the company's counsel that the enactment by the territorial legislature of Act 38, Second Special Session, superseded *pro tanto* the aforesaid requirements of sections 2178 and 1479, R. L. 1925. They argue that Act 38 supplanted the provisions of sections 2178 and 1479 so far as the provisions of the latter statutes might have had application to the contract in question and empowered the board of supervisors to utilize not only the permanent improvement fund but the general fund of the city and county for the purposes aforesaid without limitation or restraint or the penal consequences prescribed in section 2178. We cannot agree with counsel for the company that Act 38 had or was intended by the legislature to have any such sweeping effect. Act 38 did not limit the amount of the financial obligation which the board of supervisors might create in acquiring the system. If we acknowledge the theory of counsel for the company it logically follows that the board could have legally authorized a contract with the company involving an amount that might destroy the financial fabric of the municipal government even to the extent of bringing bankruptcy upon it. To prevent the possibility of any such calamity the legislature prescribed that no contract of the type now under consideration *"shall be binding or of any force unless the auditor of the Territory, county or city and county, as the case may be, shall indorse thereon his certificate that there is*

*an available unexpended appropriation or balance of an appropriation over and above all outstanding contracts sufficient to cover the amount required by such contract.*" And the legislature further prescribed that "no board of supervisors * * * of any county or city and county shall expend, or aid or participate in expending, *during any period of time for any purpose, any sum in the absence of an appropriation for such purpose for such period, or any sum in excess of an appropriation, if any, for such purpose for such period, or incur, authorize or contract, or aid or participate in incurring, authorizing or contracting, during any fiscal year, liabilities or obligations, whether payable during such fiscal year or not, for any or all purposes, in excess of the amount of money available for such purposes for such county or city and county during such year.*" These statutes contain language of the most explicit and mandatory character and to hold that the legislature, by the passage of Act 38, intended to abrogate the provisions of these public statutes would be to do violence to every known rule of statutory construction. Where two statutes cover the same subject matter and are not irreconcilable they should be construed so as to give effect to both. *Pedro, Jr.,* v. *Hapai,* 28 Haw. 744; *Territory* v. *Wills,* 25 Haw. 747; *University* v. *Auditor-General,* 66 N. W. 956. In the instant case there is nothing irreconcilable in the statutes in question. Nothing in Act 38 indicates any legislative intent to vary or nullify the provisions of sections 1479 and 2178. In fact, all three statutes are in perfect harmony.

The provisions of section 1738, R. L. 1925, conferring upon the board of supervisors the authority to purchase property needed for public use and to make contracts and do all things necessary and proper to carry into execution all powers vested in the city and county or any officers thereof, are sufficiently broad and comprehensive to au-

thorize the board of supervisors, in the absence of Act 38, to enter into the contract which was executed with the company. If, therefore, the board of supervisors complied with sections 2178 and 1479, the contract would have been entirely legal and the payments required to be made to the company would have been drawn from the general revenues of the municipality. In the absence, however, of Act 38, the board of supervisors was devoid of authority to draw upon the permanent improvement fund to meet the payments. The permanent improvement fund referred to in Act 38 was created under section 1315, R. L. 1925, and was to be made up of a portion of taxes on real and personal property. The use of this fund was restricted to certain specific permanent improvements, not, however, including the type of improvement called for in the Gamewell contract. The Act creating the permanent improvement fund for the City and County of Honolulu was subsequently repealed by Act 100, L. 1933. Act 38 therefore served but a single purpose, namely, the granting of permission to the board of supervisors to utilize all or any part of the permanent improvement fund for the purposes of discharging the financial obligation which would be created by such contract as might be entered into for the purposes aforesaid. But neither expressly nor by implication did Act 38 *ipso juri* repeal, amend or supersede section 2178 or section 1479. It left unimpaired all of the restrictive provisions of these sections, including the penal provisions of section 2178, which were enacted for the purpose of safeguarding the interests of the taxpayer and to stay the hands of improvident and reckless officials. The board of supervisors is merely an agency representing the people of the community. The legislature has wisely seen fit to withhold from it the power to hypothecate the future revenues of the municipality. The taxpayers and their posterity are

thus protected against the improvident creation of inordinate debts which may be charged against them and their property in ever-increasing volume from year to year until he who is without property may be better off than one who owns much.

Perhaps the leading case relied upon by the company is *Heberer* v. *Board of Commissioners,* 293 Pac. 349. This cause involves a lease with option to purchase of a courthouse at the county seat of Chaffee County, Colorado, entered into by the county commissioners. It appears that no buildings for the housing of the courts and county officials existed at the seat of government where such courts were required by law to be held and such officers to perform their functions. In sustaining the validity of the lease the court specifically referred to the fact that the county commissioners entered into the contract in an effort *to perform the duties imposed upon them by law.* This case is distinguishable from the one at bar, because in this jurisdiction the law imposed no duty upon the board of supervisors to purchase the system which the Gamewell Company proposed to install and sell to the municipality and further because the protective statutes of Hawaii are far more comprehensive in their terms than those of the State of Colorado and the same may be said of the statutes of Ohio which were under consideration in *Columbus* v. *Spielman,* 19 Oh. N. P. (N. S.) 257, and those in force in other jurisdictions where similar decisions have been rendered. In *Empire Voting Mach. Co.* v. *City of Chicago, supra,* a case involving the validity of a contract to purchase one thousand voting machines by the City of Chicago for $942,050, the plaintiff's right to recover was challenged on the ground that the board had no power to bind the defendant (City of Chicago) without a prior appropriation having been made to cover the purchase price of the voting machines. As in the present

case, the machines were to be paid for in installments. The United States circuit court of appeals, in denying the right of the vendor to recovery, pertinently called attention to the fact that if the authority may be found in the statute for purchasing voting machines without a prior appropriation "then there unquestionably exists authority in the same section for creating a debt of five times $1,000,000 for the same purpose." This language has special significance in view of the similarity of the facts and law involved to those in the case at bar. In *Commonwealth* v. *Foster, supra,* the supreme court of Pennsylvania had before it a municipal contract for furnishing electric light to the city of Lebanon, Pennsylvania, for a period of ten years, payable in monthly installments. The contract created a financial obligation on the part of the city but the municipality made no appropriation prior to the execution of the contract although the statute required that such an appropriation should be made before a contract creating a municipal obligation could take effect. The court said: "Not only was there no sufficient appropriation made for this contract at the date of its execution, but there was no appropriation at all, and it would be judicial defiance of statutory words, as clear as the legislature could have made them, to compel the appellee to countersign warrants drawn in payment of moneys alleged to be due on contract for expenditure under which there never was any appropriation. * * * An appropriation before the execution of a contract was a prerequisite to its valid existence."

In the same emphatic language the courts have held that where a statute requires a prior certificate of an auditor of the presence of funds to meet the obligation of a contract the absence of such certificate invalidates the contract. See *Pollok* v. *City of San Diego, supra.* The device resorted to in the present case, namely, the pur-

chase of the system by installment payments spread over a series of years without any prior appropriation or any certificate of the auditor was a clear attempt to evade the provisions of the statutes, for which reason the contract must be held to be *ultra vires* and void.

The exceptions are overruled.

*J. R. Cades (Smith, Wild, Beebe & Cades* on the briefs) for plaintiff.

*G. D. Crozier (E. C. Peters* on the brief) for defendant.

### DISSENTING OPINION OF BANKS, J.

I am unable to agree with the majority of the court in its conclusion that in the absence of Act 38 the board of supervisors had no authority to draw upon the permanent improvement fund to meet the payments provided in the Gamewell contract, on the ground that the fund was restricted to certain specific permanent improvements but not including the type of improvements in the instant case. The statute under which the permanent improvement fund (repealed as to the City and County of Honolulu, Act 100, L. 1933) was created contained the following statement of the uses to which this fund may be devoted: "In subdivision 2 (county or city and county permanent improvements) shall be included all items for permanent improvements for the counties and city and county, including, among other items, extensions and replacements to the water and/or sewer systems not otherwise provided for; new road construction of portland cement concrete, asphaltic concrete, asphalt macadam or on a portland cement concrete base, including cost of new land, or large cuts or fills in the grade, of permanent storm drains, of new bridges of like or equivalent permanent nature, and reasonable engineering and inspection expenses for the same (except that, in the case of the

counties of Hawaii, Maui and Kauai, roadwork, amounting to reconstruction, of asphalt or oiled macadam may be performed hereunder in addition to concrete roadwork) : new buildings, including additions, equipment and grounds for the same; parks, and other permanent improvements." R. L. 1925, § 1315. While it is true the kind of permanent improvements installed under the Gamewell contract were not specifically included in the *itemized statement* of permanent improvements contained in the statute, I think, nevertheless, that it cannot be doubted that while the system may not be everlasting it does possess the quality of durability which renders it permanent within the ordinary meaning of that term. If this were not so it is inconceivable that the board of supervisors would have been willing to rent it for a period of ten years for the aggregate sum of $294,060 with the expectation of owning it outright at the expiration of the rental period. The intention of the legislature not to limit the use of the permanent improvement fund to the improvements specifically mentioned but to authorize its use for all improvements of a permanent nature was twice expressed. It was first expressed in that part of the statute immediately preceding the enumeration of certain improvements for which the fund could be used. It was there provided that *all items for permanent improvements* shall be included, and again it was expressed in that part of the statute immediately following this enumeration where it was provided that the fund should be used for *other permanent improvements*. To give the specific enumeration a restrictive effect would do violence to the manifest legislative intent.

It cannot be denied that without Act 38 the Gamewell contract would be void, not because the city and county was without authority under any circumstances to enter into it but because the statutory provisions regarding

prior appropriation and the certificate of the auditor had not been complied with. (R. L. 1925, §§ 1479, 2178.) It follows, of course, that unless the contract is valid no expenditure under it could be lawfully made from any public fund. If there had been a prior appropriation and the auditor's certificate to that effect had been issued the board would not have needed the authority of Act 38 to enter into the contract and, as I believe, to use the permanent improvement fund for the purpose of payment. It is unreasonable to suppose that it was the intention of the legislature, by the passage of Act 38, merely to confer upon the board powers which it already possessed. It cannot be assumed that the lawmaking body intended that that Act be entirely without meaning. If, therefore, it is to be given a rational interpretation it must be construed to confer upon the board a power which it did not otherwise possess and not to reiterate powers which it already possessed.

For the foregoing reasons I respectfully dissent from the opinion of the majority of the court.